ROBERT MULLEN, administrator, *vs.* SPRINGFIELD STREET RAILWAY COMPANY.

Hampden.    September 26, 1895. — October 18, 1895.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Loss of Life — Street Railway — Child — Negligence — Action.*

If a boy nine years and seven months old, who has been sent to school by his parents, gets upon the rear end of a wagon for the purpose of stealing a ride, his presence being concealed from the driver of the team by the contents of the wagon, and, while so riding along a street through which an electric railway runs, although warned by a companion, who is riding in the same manner, to look out for an approaching car, suddenly jumps from the wagon when the car is nearly opposite the horse's head, and goes upon the track just forward of the car and is struck by the car and killed, he is guilty of such negligence as to preclude an action against the railway corporation for causing his death.

TORT, under St. 1886, c. 140, by the administrator of the estate of Robert J. Mullen, for causing his death. At the trial in the Superior Court, before *Hopkins*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*W. H. Brooks*, (*W. Hamilton* with him,) for the defendant.

*J. B. Carroll*, (*W. H. McClintock* with him,) for the plaintiff.

KNOWLTON, J. The plaintiff's intestate, Robert J. Mullen, a boy nine years and seven months old, with Joseph Rivers, another boy a little older with whom he was not acquainted, was riding at the hind end of a grain dealer's business wagon along Chestnut Street in Springfield. A single track of the defendant's electric railway was laid through the middle of the street. The driver sat on a seat at the forward end of the wagon, driving a single horse, and he had no knowledge of the presence of the boys who got upon the wagon without the permission of anybody. The plaintiff's intestate was on the wagon when Rivers first saw it, and they afterwards sat with their backs to the driver and their feet hanging over the tailboard. Mullen was on the left hand side of the wagon next the track, and there were empty boxes between the boys and the driver. As the team was going at an ordinary rate of speed on the right hand side of the street it met an electric car. The distance between the curbstone and the nearest rail of the track is given by estimate as eight or ten feet. Both boys were intending to go up Franklin Street, Mullen to a school which he attended, and Rivers to the house of his uncle on that street. They met the car at Greenwood Street, which is the next street to Franklin Street and very near it. The horse, which was not much accustomed to electric cars, shied a little, but was easily controlled. Either because they were so near the place where they were to turn from Chestnut Street, or for some other reason, the boys jumped out, and the driver went on without knowing until long afterwards that they had been upon his wagon. When they jumped the electric car was very nearly opposite the horse's head. Rivers jumped on the right hand side of the wagon, and ran along to the right of the horse, on the sidewalk or between the curbstone and the wagon ; Mullen jumped to the left of the wagon, went upon the track just forward of the car, and

was run over and killed.   The action is brought under St. 1886, c. 140, and the plaintiff contends that his intestate's life was lost through the negligence of the defendant, or the gross negligence of its servants or agents.

There is hardly more than a scintilla of evidence to sustain this part of the case.   To show negligence of the corporation, he relies upon the fact that there was no fender upon the car; but the accident happened on June 2, 1893, and the evidence tended to show that of the numerous corporations in the different parts of the State that had begun to run cars by electricity the West End Street Railway Company in Boston was the only one that had then used any fenders upon its cars, and the defendant offered to show that the use of fenders by that corporation was then only experimental.   It is hard to see how the motorman was in fault.   The great weight of evidence was that the car was going at about four to six miles an hour, and there was nothing to indicate that it was going very much faster than that.   The testimony was that the motorman did not see Mullen while he was on the wagon, and there is nothing to indicate that he did.   He certainly had no reason to expect that anybody would jump from the hind end of a wagon just as it was about to pass the car, and step upon the track.   Even if he was negligent, the defendant is not liable for his conduct in this action unless he was grossly negligent.

But if we assume that there was evidence for the jury on this part of the case, we find no evidence of due care on the part of the plaintiff's intestate.   Rivers testifies that just before they jumped off he told Mullen to look out for the car, and that Mullen heard him.   If, being warned to look out for the car, he immediately stepped upon the track before it, he certainly was careless.   He was a trespasser upon the wagon, and his conduct in stealing a ride and in getting on and off the wagon when it was in motion, gives color to his conduct in going upon the track immediately before the coming car.   When he left his father's house he was sent to school, and when he was next seen riding with this team he was at a considerable distance from the line of travel to the schoolhouse, coming from a point farther off.   In going upon the track at midday without looking to see whether a car was coming, when the view was unobstructed

and he could easily have heard the car, he was far more negligent than was the plaintiff in *Messenger* v. *Dennie*, 137 Mass. 197, and 141 Mass. 335.     Messenger was a boy of about the same age as the deceased, and was riding upon a sleigh runner, and stepped off before an approaching team without looking, and it was held as matter of law that he was negligent.   There are also other authorities which require us to hold that there was no evidence in the present case that the plaintiff's intestate was in the exercise of due care. *Hayes* v. *Norcross*, 162 Mass. 546. *Casey* v. *Malden*, 163 Mass. 507, 508. *Thompson* v. *Buffalo Railway*, 145 N. Y. 196. *Hestonville Passenger Railway* v. *Connell*, 88 Penn. St. 520.                    *Exceptions sustained.*