MARY GALBRAITH, administratrix, *vs.* WEST END STREET
RAILWAY COMPANY.

Suffolk.   November 20, 21, 1895. — April 7, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Loss of Life — Street Railway — Rights of Traveller and Railway in Street —
Due Diligence — Law of the Road — " Gross Negligence " — Instructions
to Jury.*

In an action against a street railway corporation for the death of G., whose cart
attached to a horse which he was driving was struck by an electric car while
he was attempting to cross the railway tracks, the plaintiff requested the judge
to instruct the jury that, " when the motorman saw that G. was proceeding as
though to cross the track, it would be his duty, so far as he was able, to reduce
the speed of his car, and stop the same before reaching the point where G. was
crossing."   There was conflicting evidence as to the speed with which the car
was coming and as to what was done by the motorman, and the jury were fully
instructed upon this branch of the case.   *Held,* that the request was properly
refused.

While a traveller driving upon a street on which an electric railway runs has a
right to cross the street, an electric car has also a right to proceed on its course,
and both the traveller and the motorman in charge of the car are bound to use
proper care to avoid a collision.

It is incumbent on the plaintiff, in an action under St. 1886, c. 140, against a street
railway corporation for the death of his intestate, who was injured by an elec-
tric car while he was attempting to cross the railway tracks, to show that the
intestate, at the time of the accident, was in the exercise of "due diligence";
and, if there is no evidence that the motorman was unfit, it is a question for
the jury whether the intestate exercised due diligence and whether the motor-
man was grossly negligent or careless.

A person driving along a street which leads into, but does not cross, another street
upon which an electric railway runs, is not bound, after entering upon the latter
street, to cross over to the right hand side of that street in the direction in which
he is going, but is entitled to use the left hand side of the street, unless and un-
til he meets a vehicle coming from the opposite direction.

The term "gross negligence," as used in St. 1886, c. 140, giving a right of action
against a street railway corporation for causing the death of a person, means
something more than a want of ordinary care.

At the trial of an action against a street railway corporation for the death of a
person who was injured by an electric car while he was attempting to cross the
railway tracks, the judge instructed the jury as follows: " Something should
be said in a general way as to the speed of street cars.   I can better illustrate
what I mean by referring, perhaps, to steam railway cars. . . . Now a steam
railroad as to its passengers, and its duty is a very rigid one, for it is required
to use the highest degree of care and diligence to avoid injury to them, is not
required to use a degree of care which is inconsistent with the prosecution of

the business in which it is engaged. And notwithstanding, by reason of the rapid rate at which the cars move, injuries are inflicted, yet there can be no recovery for those injuries, unless something other than the rate of speed is shown as the alleged negligence of the railway corporation. To some extent the same consideration applies to the movement of the street cars." The jury were further instructed, that they were to inquire whether the car, at and before the time of the collision, was moving at an excessive rate of speed, in view of the situation; that they were to take into consideration the character of the street, whether there were dwellings along the line of it, and whether other streets crossed the street in question or came into it; and that they were to determine, upon all the evidence, what the rate of speed was, and whether it was an excessive rate, and whether the motorman was or was not in fault in not checking the speed of the car. *Held*, that the plaintiff had no ground of exception.

G. drove his team from another street, which did not cross it, into M. Street, upon which an electric railway ran, and, in attempting to cross the railway tracks so as to be on the right hand side of the street in the direction in which he was going, was injured by an electric car. In an action against the street railway corporation for his death caused by such injury, the judge instructed the jury as follows: "Was there a necessity that G. as he came upon M. Street should cross the railroad track then and there, at that moment? What would a person of ordinary prudence and discretion have done, as he came where the car could be seen, as to driving his horse? Would he have attempted to cross the street then, or would he have turned to the left, and gone down upon the left hand side of M. Street until there was an opportunity to cross, if he desired on the whole to be upon the right hand side of the street so as to avoid the necessity of turning when he met a vehicle? You will say what the evidence is as to there being anything in the way to prevent G., instead of crossing the track, from turning for the time to the left; and, on the whole, you will say what, in the exercise of reasonable care, he ought to have done. What would a man of ordinary prudence and discretion have done at the same time? What was the room within which he could move?" *Held*, that the plaintiff had no ground of exception.

TORT, under St. 1886, c. 140,* by the administratrix of the estate of James Galbraith, who was her husband, to recover damages for his death, occasioned by injuries received by him on February 6, 1894, while crossing the tracks of the defendant's railway on Main Street, in Cambridge, through the alleged gross

---

* The material part of the statute is as follows:

"If by reason of the negligence or carelessness of a corporation operating a street railway, or of the unfitness or gross negligence or carelessness of its servants or agents, while engaged in its business, the life of a passenger or of a person being in the exercise of due diligence and not a passenger or in the employment of such corporation, is lost, the corporation shall be liable in damages, . . . to be assessed with reference to the degree of culpability of said corporation, or of its servants or agents, and to be recovered in an action of tort."

negligence of the defendant's servants. Trial in the Superior Court, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows.

It appeared in evidence, that, in the forenoon of February 6, 1894, Galbraith was passing along the left hand side of First Street, in Cambridge, driving a horse attached to an empty cart, in which he was standing, and was proceeding across the tracks of the defendant's railway to the side of Main Street opposite First Street on his way to Boston, being the right hand side of Main Street in the direction in which he was going. He had proceeded across the track which was nearest First Street, and was entirely over with the exception of a wheel of his cart, which was struck by an electric car under the control and management of the servants of the defendant, and the cart was overturned, and he received the injuries from which he died.

It appeared in evidence also that there was a tight board fence, about eight feet high, on the left hand side of First Street as one approaches Main Street, to the corner of Main Street; that this corner was eighteen feet from the first rail of the defendant's tracks; that the distance between the edge of the curbing on Main Street and the first rail was twelve feet; that it was impossible for Galbraith, if sitting in his cart, to see the car until he passed into Main Street, or for the motorman in charge of the car to see the team driven by Galbraith until the head of the horse reached Main Street beyond First Street; and that the distance between the drawbridge on Main Street and First Street was twelve hundred and seventy-eight feet, and there was no stopping place for the car between the bridge and First Street.

The plaintiff introduced evidence tending to show that, at the time when Galbraith's team first came into view in Main Street, the electric car by which his team was struck was from seventy to one hundred and fifty feet distant therefrom, and was going at a rate of from ten to fifteen miles per hour.

The defendant introduced evidence tending to show that the car was distant from Galbraith's team about seventy feet or less when the team came into view from First Street; that the car was going at a rate not exceeding eight miles per hour; and that the rules of the defendant provided that its cars should not run at a greater speed than that.

The evidence was conflicting as to the efforts that were made by the motorman in attempting to stop his car before reaching Galbraith's team; some of the witnesses testifying that no attempt was made to stop the car, beyond shutting off the power, until very near the place of the accident, and other witnesses testifying that the motorman did all in his power to stop his car as soon as he saw the team passing from First Street as though to cross the railway tracks.

It appeared from evidence which was not controverted that, after striking the cart and slewing it one or two feet before overturning it, the car went beyond the point of collision about five or six feet before it was stopped.

The plaintiff requested the judge to instruct the jury as follows :

" 1. Galbraith would not be guilty of negligence in assuming that the motorman would exercise due care.

" 2. When the motorman saw that Galbraith was proceeding as though to cross the track, it would be his duty, so far as he was able, to reduce the speed of his car, and stop the same before reaching the point where Galbraith was crossing.

" 3. Galbraith had a right to cross the track, and assume that the motorman would control his car, if he was at a sufficient distance to do so.

" 4. If Galbraith was going from First Street to Boston over Main Street, it would be proper, and his duty by the law of the road to avoid collision, to go at once to the right hand side of Main Street, as he was going to Boston.

" 5. Any negligence which is legally sufficient to charge the defendant is ' gross negligence.'

" 6. ' Gross negligence ' and ' want of care ' are convertible terms.

" 7. The term ' gross ' in the allegation ' gross negligence ' is merely an expletive.

" 8. The language of the statute, that damages may be assessed according to the degree of culpability, implies that there may be different degrees even in gross negligence."

The judge gave the first and eighth rulings requested, declined to give the others, and instructed the jury, among other things, as follows :

" You need to bear in mind that First Street is not a street crossing Main Street. It starts at Main Street and then runs off in a certain direction. The rights of parties — the traveller in an ordinary vehicle drawn by horses, and a corporation running electric cars upon its rails along through the street — are somewhat different where the person who is in the vehicle drawn by horses is crossing the street in which the rails are, and where pursuing his journey he must cross the rails along which the cars run. The rights and the duties of such a traveller are somewhat different from the rights of a person in the position in which Galbraith was at the time.

" Suppose, to illustrate what I mean, that somebody had driven upon the track of the street railway company, and had then proceeded along that track in the direction towards Cambridge at a leisurely rate. Now suppose the motorman had not checked the speed of his car, that the car was going more rapidly than the vehicle drawn by the horses, and that a collision occurred and the person riding in the vehicle drawn by a horse was injured. You may very well say that the motorman was careless, for he should have stopped his car; it was within his power to stop his car, but he did not do it. Suppose he had not checked the speed of his car at all, and knew perfectly well that the result of not checking the speed of the car would be a collision. A person who was riding in the vehicle drawn by a horse could not maintain any action to recover damages, however serious his injury might be. . . .

" What would men of ordinary prudence and discretion, under the same circumstances, with the knowledge that Galbraith had, have done in respect to learning by the use of his eyes and the use of his ears whether there was danger of collision with a street car ? What did he know as to the rate of speed at which those cars usually ran in that place ? What did he know as to the frequency with which they ran ? Was he in fault in driving upon First Street on the left hand side of the street approaching Main Street ? It is said that there was a board fence which obstructed his view until he came upon Main Street, whereas, had he driven upon the other side of the street, he could have seen the car approaching a considerable distance before it was possible to see it driving out upon the left hand side.

" And that leads me to say a word, because it has been referred to by counsel, as to the duty of a person driving in one of our streets to go upon the right hand or upon the left hand side of the street. It is said in this case that Galbraith was about to come into Boston, and that therefore he drove across the track, because it was his duty to go to the right hand side of the street and drive there. That is not a correct statement of the law. A man has the right under the law in this Commonwealth to drive upon either side of the street, or any part of the street, excepting only that, in case of vehicles meeting, when a man who is driving meets a carriage going in the same direction or going in the other direction, then the law provides what he shall do. If Galbraith, driving upon the left hand side of Main Street, had met a carriage going in the opposite direction, then it would have been his duty to pass over beyond the middle line of Main Street. But until that occurred he had exactly as good a right to travel upon the left hand side of Main Street as upon the right hand side of Main Street; and he had the same right in coming out of First Street to be on the left hand side of the street as on the right. Was there a necessity that Galbraith as he came upon Main Street should cross the railroad track then and there at that moment? What would a person of ordinary prudence and discretion have done, as he came where the car could be seen, as to driving his horse? Would he have attempted to cross the street then, or would he have turned to the left and gone down upon the left hand side of Main Street until there was an opportunity to cross, if he desired on the whole to be upon the right hand side of the street so as to avoid the necessity of turning when he met a vehicle. You will say what the evidence is as to there being anything in the way to prevent Galbraith, instead of crossing the track, from turning for the time to the left; and, on the whole, you will say what, in the exercise of reasonable care, he ought to have done. What would a man of ordinary prudence and discretion have done at the same time? What was the room within which he could move? You, of course, need not be reminded of the fact that the railway car was obliged to run upon its rails. It is said that the car was running at an excessive rate of speed, and that is a proper matter for your consideration.

" Something should be said in a general way as to the speed of

street cars.  I can better illustrate what I mean by referring, perhaps, to steam railway cars.  Everybody knows that there are accidents, and frequently very serious ones, involving the loss of life or the loss of limb, because of the rate of speed at which steam cars move along the rails upon which they run; and some of those accidents and injuries would be avoided, and perhaps very many of them, if the steam cars did not in any event go more rapidly than eight or ten miles an hour, and more would be avoided if they did not go more rapidly than four or five miles an hour.  But obviously any low rate of speed of that sort would be totally inconsistent with the purpose and end in view in the use of steam cars.

"Now a steam railroad as to its passengers, and its duty is a very rigid one, for it is required to use the highest degree of care and diligence to avoid injury to them, is not required to use a degree of care which is inconsistent with the prosecution of the business in which it is engaged.  And notwithstanding, by reason of the rapid rate at which the cars move, injuries are inflicted, yet there can be no recovery for those injuries, unless something other than the rate of speed is shown as the alleged negligence of the railway corporation.  To some extent the same consideration applies to the movement of the street cars.

"Now, a certain rate of speed is required by the public, and a certain rate of speed is reasonable. . . . And you will inquire, if you come to the question of negligence in this case, whether or not upon the evidence it appears here that this railway car, at and before the time of the collision, was moving at an excessive and unreasonable rate of speed, in view of the situation there.  Take into consideration the character of the street over the bridge up to First Street.  You know whether there are dwellings along the line of the street there, whether other streets cross Main Street or come into Main Street, and you will say, in the exercise of sound discretion, having determined upon all the evidence in the case what the rate of speed was, whether it was an excessive rate of speed.  And you are to determine also, upon the evidence in the case, whether the motorman was or was not in fault in not checking the speed of his car.

"Now, as counsel have said to you, it is not easy to define the term 'gross negligence,' but, in a general way, I think you will

have no difficulty in understanding what it means. It means great carelesness, great negligence. . . . And you must find gross negligence on the part of the motorman, or else the action cannot be maintained."

At the close of the charge, the plaintiff's counsel stated that he excepted to the refusal to give his requests for instructions, and to the instructions given, so far as they differed from his requests; also that he excepted to the charge of the judge in relation to the duty of the deceased in crossing the defendant's tracks from First Street, stating that he considered that the right and duty of the deceased was the same as though First Street had proceeded beyond Main Street, and that he was crossing Main Street to proceed to Boston; and that he also excepted to the instructions as to the speed of the electric cars.

The judge then instructed the jury as follows:

"I did not mean to say, and I think you could not have so understood, that Galbraith had not the right to cross the street. I wanted to call your attention to the difference between Galbraith's position, which I apprehend is a difference existing and recognized by the law, in view of the fact that he was not in the act of crossing a street for the purpose of pursuing his journey upon a street that did cross Main Street at the time; and that, pursuing his journey to Boston, he might, unless there was some team in the way, have turned, as I said to you, to the left, and waited until the car went by. He was required to do what was reasonable under the circumstances. I think the general rule of law is recognized in our statutes, which makes it a penal offence wilfully to obstruct the cars of a street railway company."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*F. J. Daggett,* (*H. P. Harriman & G. P. Wardner* with him,) for the plaintiff.

*H. R. Bailey,* for the defendant.

LATHROP, J. This is an action of tort, under the St. of 1886, c. 140, by the administratrix of the estate of James Galbraith, to recover damages for the death of her husband, caused by injuries received by him on February 6, 1894, while attempting to cross the tracks of the defendant's railway, on

Main Street in Cambridge. Just before the accident, the intestate was driving along First Street in his cart. He drove out of First Street, which does not cross Main Street, but, for the purpose of getting on the right hand side of Main Street, he proceeded straight ahead to cross Main Street.

In the Superior Court, the jury returned a verdict for the defendant, and the case comes before us on exceptions taken by the plaintiff to the refusal of the presiding judge to give certain requests for instructions, and there are also exceptions to certain portions of the charge. The judge gave the first and eighth requests for instructions, and refused to give the second, third, fourth, fifth, sixth, and seventh.

The second request was properly refused. The plaintiff, in his argument, has assumed that this request placed the parties in a condition where the intestate was on the track, in the act of crossing; but this is not stated in the request, and in fact the terms of the request show that it was intended to apply to a time before the intestate got upon the track. There was conflicting evidence in the case as to the speed with which the electric car was coming, and as to what was done by the motorman, and the jury were fully instructed upon this branch of the case.

The third request was properly refused. It was incumbent upon the plaintiff, under the St. of 1886, c. 140, to show that her intestate was in the exercise of "due diligence." While the intestate had a right to cross the street, the electric car had also a right to proceed on its course; but both were bound to use proper care to avoid a collision. *Driscoll* v. *West End Street Railway*, 159 Mass. 142. *Glazebrook* v. *West End Street Railway*, 160 Mass. 239. The defendant corporation is not liable for the act of the motorman, unless he was either unfit or there was gross negligence or carelessness on his part. There was no evidence that the motorman was unfit, and it was a question for the jury whether the intestate exercised due diligence, and whether the motorman was grossly negligent or careless.

The fourth request was rightly refused, and the law on this point was correctly stated in the instructions given to the jury.

The fifth, sixth, and seventh requests relate to the term "gross negligence." The plaintiff contends that the word

"gross" has no more effect than the word "due" or "ordinary." But while this view has been adopted in some jurisdictions, it never has been the law here. The term "gross negligence" means something more than a want of ordinary care. It is used not only in the St. of 1886, c. 140, but also in the Pub. Sts. c. 73, § 6; c. 112, § 212; c. 202, § 34. See *Copley* v. *New Haven & Northampton Co.* 136 Mass. 6; *Debbins* v. *Old Colony Railroad*, 154 Mass. 402, 404; *Sullivan* v. *New York, New Haven, & Hartford Railroad*, 154 Mass. 524; *Manley* v. *Boston & Maine Railroad*, 159 Mass. 493; *Mullen* v. *Springfield Street Railway*, 164 Mass. 450.

The remaining exceptions relate to specific portions of the charge. The plaintiff contends that the jury might have been misled by what was said in regard to railroads and steam cars. But we do not understand that the judge intended to instruct the jury that electric cars might run at the same rate of speed as cars on a road operated by steam. See *Doyle* v. *West End Street Railway*, 161 Mass. 533. The jury were carefully instructed that they were to inquire whether this car, at and before the time of the collision, was moving at an excessive rate of speed, in view of the situation; and they were told to take into consideration the character of the street, whether there were dwellings along the line of it, whether other streets crossed Main Street or came into it; to determine upon all the evidence what the rate of speed was, and whether it was an excessive rate of speed, and whether the motorman was or was not in fault in not checking the speed of his car; by which we presume the judge meant in not checking it sooner, for there is no doubt that it was checked to some extent.

The last exception relates to what was said as to the right of the intestate to cross Main Street. We have already stated, in considering the third request for instructions, that this right was not absolute; and we see no objection to that portion of the charge which left to the jury the question whether the intestate was in the exercise of reasonable care in not turning to the left as soon as he reached Main Street, rather than to attempt to cross the tracks when a car was coming. It was correctly said that "a man has the right, under the law in this Commonwealth, to drive upon either side of the street, or any part of

the street, excepting only that, in case of vehicles meeting, when a man who is driving meets a carriage going in the same direction or going in the other direction, then the law provides what he shall do "; and also in what follows this.

We are, therefore, of opinion that the plaintiff has shown no ground of objection, and that the exceptions must be

*Overruled.*