CATHERINE DEVINE, administratrix, *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.    March 8, 9, 1910. — March 23, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Negligence,* Gross. *Railroad.*

In an action by an administratrix against a railroad corporation under R. L. c. 111, § 267, for causing the death of the plaintiff's intestate by reason of the alleged gross negligence of the defendant's servants, it appeared that the plaintiff's intestate was in the employ of the city in which the accident occurred, and for about three months had been at work with others under the charge of an assistant superintendent of the water works of the city in laying a water pipe across the location of tracks on which trains were operated by the defendant, at a place not far from a large terminal station and near a yard for passenger coaches and a coaling station for locomotives, that it was a very noisy place and there were many tracks there, that trains and locomotives constantly were passing and repassing, both backing and going forward, and that from the place where the

accident occurred trains coming from the terminal station were visible for about two hundred feet. There was evidence tending to show that when a locomotive was coming from the direction of the station with its tender forward, it was impossible from the cab to see the track where the plaintiff's intestate was, that the workmen of the city had been warned repeatedly to look out for themselves, and that it was customary, when the gang of men to which the plaintiff's intestate belonged was at work on the tracks, for one of the intestate's fellow employees to be posted nearer the station, where he could see down the curve to give warning of approaching trains, but that at the time of the accident no such man was at this post for the reason that all the men of the gang, with the exception of the plaintiff's intestate, had left the tracks for other work, that the plaintiff's intestate remained behind and was bending over to pick up some blocking, when he was struck by the tender of a locomotive which was backing from the direction of the station and was drawing a train of cars on one of the main outward tracks. There was some evidence that it had been a custom for trains coming from the terminal station to ring a bell and that no one heard the bell of this engine ring, that the defendant knew that the work of the city was going on and that the train which caused the injury did not stop. *Held*, that there was no evidence for the jury of gross negligence of any of the agents or servants of the defendant.

TORT by the administratrix of the estate of John Devine late of Boston, who also was his widow, for the benefit of herself and their children, against the New York, New Haven, and Hartford Railroad Company, under R. L. c. 111, § 267, for causing the death of the plaintiff's intestate on January 15, 1904, by reason of its negligence and the unfitness and gross negligence of its agents and servants while engaged in its business, while the plaintiff's intestate was in the exercise of due care and was at work as a laborer in the employ of the city of Boston. Writ dated November 21, 1904.

In the Superior Court the case was tried before *White*, J., who ruled that upon the evidence the plaintiff was not entitled to recover, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*L. K. Clark*, for the plaintiff.

*J. Wentworth*, for the defendant.

RUGG, J. This is an action under R. L. c. 111, § 267, to recover for the death of John Devine, who was an employee of the city of Boston and who lost his life under these circumstances: For about three months he had been at work with others under the charge of an assistant superintendent of the Boston Water Works in lawfully laying a water pipe across the location of tracks operated by the defendant, at a place not far from the

South Terminal Station and near the yard for passenger coaches and the coaling station for locomotives, where there were many tracks, and trains and locomotives were constantly passing and repassing, both backing and going forward.   There was a bridge over the tracks and a curve near by, so that trains coming from the South Station were visible for about two hundred feet from where the accident occurred; and there was evidence tending to show that when a locomotive was coming from that direction, tender forward, it was impossible from the cab to see the track where the plaintiff was.   It was customary, when the gang of men to which the plaintiff's intestate belonged was at work on the tracks, for one of his fellow employees to be nearer the station, where he could see down the curve, to give warning of approaching trains; but at the time of the accident no such man was at this post for the reason that all the men, with the exception of the plaintiff's intestate, had left the tracks for other work.   The plaintiff's intestate remained and was bent over to pick up some blocking, when he was struck by the tender of the locomotive, which was backing and drawing a train of cars on one of the main outbound tracks.

In order to recover the plaintiff must show that the death of her intestate was due either to the negligence of the defendant or to the unfitness of its employees or their gross negligence. There was no evidence of the negligence of the defendant or of the unfitness of its employees.   But it is urged that a finding of gross negligence, on the part of those in charge of the locomotive by which the plaintiff was struck, could be supported on the ground that there was some evidence to the effect that it had been a custom for trains coming from the South Station to ring the bell, and no one heard the bell of this engine ring; and that the defendant knew the work of the city of Boston was going on and that the train which caused the injury did not stop.   The plaintiff's witnesses all testified that it was a very noisy place by reason of the constant running of trains, and that all the employees of the city had been repeatedly warned to look out for themselves, and that, in addition, when they were at work a guard was stationed to give them the alarm of an approaching train.

These circumstances fall far short of establishing that carelessness on the part of the servants of the defendant, manifestly

materially greater than want of common prudence, which is necessary in order to reach gross negligence. A substantially and appreciably greater degree of negligence than failure to exercise ordinary care must be shown before the heedless and palpable disregard of the safety of others is proved, which characterizes that excess of ordinary negligence, termed "gross" in the statute. *Brennan* v. *Standard Oil Co.* 187 Mass. 376. *Lanci* v. *Boston Elevated Railway,* 197 Mass. 32. *McNamara* v. *Boston & Maine Railroad,* 202 Mass. 491. *Martin* v. *Boston & Northern Street Railway, ante,* 16. *Galbraith* v. *West End Street Railway,* 165 Mass. 572, 581. *Nauss* v. *Boston & Maine Railroad,* 195 Mass. 364. *Pearlstein* v. *New York, New Haven, & Hartford Railroad,* 192 Mass. 20, 27.

The plaintiff's intestate was working in a highly dangerous place, over which the defendant's servants were obliged to run its trains in the performance of its duties to the public. The evidence all shows that the employees of the city were expected to, and in fact did except on this single occasion, look out for their own safety. There is nothing to indicate that there was any duty on the part of the defendant's employees to ring the bell at that place, or that, in view of all the noise in the neighborhood, anybody could or did rely upon warning from that source. They were justified in assuming that the plaintiff's intestate would himself exercise a standard of care commensurate with his peril. He was stooping at the side of the track, after all his fellows had left the vicinity, without taking care to look for an oncoming train after it was in sight or having any one else to look out for him. Although the defendant's employees may have known that the work in which the deceased was engaged was going on, yet they may have been assumed to know also that, when the city's men were in a place of danger on the tracks, one of their number was always stationed near the curve to give warning for their protection; and his absence on this occasion may well have been taken by the defendant's employees as indicating that they could proceed without apprehension of the presence of any city workmen.

*Exceptions overruled.*