## HARRIET W. HARRINGTON *vs.* ANSON HARRINGTON.

On a trial by jury of a libel for divorce for the cause of adultery, at which the libellant, the libellee and the alleged paramour of the libellee were all witnesses, the judge instructed the jury that formerly it was thought unsafe to permit parties to testify, for fear that in the infirmity of human nature they would not tell the truth; that criminals especially were formerly not allowed to testify in their own behalf, because it was said by many that it would be a mere farce to allow them to do so, that a man who committed a crime would surely lie about it, a man charged with adultery would swear he was not guilty, to shield himself, and, under a false sentiment of honor, to screen his paramour, and a woman who was so depraved as to commit adultery would have no other course but to deny it, for to stay away would be confession; and that, in view of these suggestions, such testimony was to be received with care; but that the questions of fact and the credit due to witnesses were solely for the jury, and he intended to express no opinion in regard to them. *Held,* that the instructions afforded the libellee no ground of exception under the Gen. Sts. c. 115, § 5, as a charge to the jury with respect to matters of fact.

It is discretionary with the court, on the trial of a libel for divorce for the cause of adultery, to order further specifications of the alleged criminal act.

It is discretionary with the court to allow a libel for divorce to be amended without *terms* during the trial.

LIBEL, filed July 13, 1870, for a divorce from the bond of matrimony for the cause of adultery committed by the libellee with Elizabeth Morse "at sundry times" since the marriage of the parties, "and at sundry places" to the libellant unknown; for the cause of extreme cruelty "since the marriage;" and for the cause that the libellee, "though he is of sufficient ability, grossly, wantonly and cruelly refuses and neglects to provide suitable maintenance" for the libellant.

By order of the court, upon motion of the libellee, the libellant filed specifications under each of her charges. The specification under the charge of adultery was: "Various acts of adultery by the libellee with said Elizabeth Morse during and within the time said Elizabeth Morse lived at Northampton and in the house of the libellee, to wit, in the years 1867, 1868 and 1869." That under the charge of extreme cruelty was: "Extreme cruelty within and during the time between January 1, 1869, and March 1, 1870, by neglect to provide suitable food and clothing, fuel and care." And that under the charge of insufficient maintenance was: "Neglect to provide suitable maintenance between January 1, 1868, and the day of the filing of the libel." Thereupon the following issues were framed for a jury:

"Was the libellee guilty of adultery with one Elizabeth Morse within the years 1867, 1868 and 1869, at Northampton, and while the said Elizabeth Morse was living in the house of the libellee, and in the house of the libellee?

"Was the libellee guilty of grossly, wantonly and cruelly refusing and neglecting to provide suitable maintenance for the libellant, within the period from January 1, 1868, to July 13, 1870, he being of sufficient ability to provide the same."

At the trial, before the jury were empanelled, the libellee moved for an order for a fuller specification under the charge of adultery; but *Colt*, J., overruled the motion, stating, however, that relief should be afforded to the libellee, if, in the course of the trial, the evidence offered under the specification, as it stood, should appear to be a surprise to him. The libellee also contended that the second issue was improperly framed under the libel; but the judge directed the trial to proceed upon it, and afterwards, during the trial, allowed an amendment of the libel, without terms, so as to allege the neglect to provide suitable maintenance between the dates specified in that issue. The libellee did not ask for any delay by reason of the amendment. The jury returned a verdict against the libellee upon both issues, and he alleged a bill of exceptions, which, after stating the foregoing facts and rulings, and the substance of the evidence introduced on the trial, concluded as follows:

" The defendant and Elizabeth Morse were called as witnesses and testified; and both denied ever having had sexual intercourse with each other. They gave material evidence for the libellee on both issues. The libellant was also a material witness in her own behalf. The counsel for the libellee, in his argument to the jury, claimed that the evidence of the libellee and Elizabeth Morse was to be relied on the same as that of any witnesses having an interest in the issues involved. The judge instructed the jury at some length upon both issues, but without written minutes of his charge; no objection was made or exception taken to his remarks to the jury at the trial, nor was any request made for further or more particular instructions. The attention of the judge was first called to what purported to be a small portion of his charge, some days after the adjournment of the term, when the libellee presented his exceptions in their original draft. But in substance the jury were told, so far as relates to the matters now complained of, that the questions of fact and the credit due to witnesses were solely for them, that the court intended to express no opinion in regard to them and they had no right to infer from anything that might fall from the judge what his own opinion was upon the facts. Upon the charge of adultery, he stated the nature of the fact to be proved, and the kind of evidence by which such a fact is ordinarily established; and then went on to say that this evidence was here met by the denial of the husband and Elizabeth Morse; that parties to the suit as the law now stands have a right to testify, though formerly it was thought unsafe to permit it, and even a pecuniary interest however trifling was formerly sufficient to exclude a man from testifying in his own favor, for fear that in the infirmity of human nature he would not testify to the truth; that this was the law for many ages; that criminals especially were formerly not permitted to testify in their own behalf, because it was said by many that to allow it would be a mere farce; that a man who committed a crime would certainly lie about it, and a man charged with adultery would swear he was not guilty, tempted both to shield himself and by a false sentiment of honor to screen the other party to the crime. That a woman who was so depraved as to commit adultery would

have no other course but to come forward and deny it, for to stay away would be confession. That such testimony was to be received with care, in view of these suggestions. As the law now stands, both parties have now a right to testify, and the jury must receive and examine their testimony and give it such weight as in their opinion it ought to have. If satisfied that they tell the truth, or if upon all the evidence they are not reasonably satisfied that the burden which is upon the libellant to prove her case is removed, they must bring in a verdict of not guilty on this issue. To the rulings and instructions above stated the libellee excepted."

*W. Allen & D. W. Bond*, for the libellee.

*C. Delano*, (*J. C. Hammond* with him,) for the libellant, was stopped by the court on the points relating to the specifications and the amendment.

MORTON, J. The statute provides that " the courts shall not charge juries with respect to matters of fact, but may state the testimony and the law." Gen. Sts. *c.* 115, § 5.

In *Commonwealth* v. *Barry*, 9 Allen, 276, the court held, after careful consideration of the construction of this statute, that it prohibited the judge from expressing his opinion as to the credibility of the witnesses examined in the case. In the opinion of the court, Chief Justice Bigelow says : " The prohibition must be regarded as a restraint only on the expression of an opinion by the court on the question whether a particular fact or series of facts involved in the issue of a case is or is not established by the evidence. In other words, it is to be construed so as to prevent courts from interfering with the province of juries by any statement of their own judgment or conclusion upon matters of fact. This construction effectually accomplishes the great object of guarding against any bias or undue influence which might be created in the minds of jurors, if the weight of the opinion of the court should be permitted to be thrown into the scale, in deciding upon issues of fact. But further than this the legislature did not intend to go. The statute was not designed to deprive the court of all power to deal with the facts proved. On the contrary, the last clause of the section very clearly contemplates that the duty

of the court may not be fully discharged by a mere statement of the law. By providing that the court may also state the testimony, the manifest purpose of the legislature was to recognize and affirm the power and authority of the court, to be exercised according to its discretion, to sum up the evidence, to state its legal effect and bearing on the issues, and to indicate its proper application under the rules of law."

In *Commonwealth* v. *Larrabee*, 99 Mass. 413, it was held that this statute, while it restrains the judge from expressing an opinion upon the credibility of particular witnesses, does not preclude him from defining the degree of weight which the law attaches to a whole class of testimony, such as the testimony of accomplices, leaving it to the jury to apply the general rule to the circumstances of the case. Similar principles are held in *Durant* v. *Burt*, 98 Mass. 161, and *Oakman* v. *Boyce*, 100 Mass. 477.

Critically examining the charge in the case at bar, in the light of the principles established by these cases, we are unable to see that it is open to the objection that the court charged in respect to matters of fact. The report of the charge, in the bill of exceptions, is manifestly defective, especially in the punctuation. But there is no difficulty in ascertaining from the context what the meaning of the presiding judge was. If we were to adopt the views of the libellee's counsel, and construe the charge as stating, as a rule of law, that a person charged with adultery would swear he was not guilty, it would be liable to exception. But such clearly was not the meaning of the judge. He was stating the reasons used against the admissibility of two classes of testimony, namely, that of parties to the suit, and that of persons accused of crime ; and was not laying down a rule of law or indicating his own opinion. The manifest design and effect were, to call the attention of the jury to the peculiar circumstances under which these two classes of witnesses always testified, leaving them to apply the general rule to the case before them. The suggestions as to the testimony of parties to the suit applied as strongly to the libellant as to the libellee. It was the duty of the jury to keep constantly in their minds the peculiar circumstances under which witnesses of these classes always testified.

Unless they did so, they could not intelligently weigh the testimony in the case. We do not think that the judge exceeded his duty, in calling their attention to these considerations, and instructing them that the testimony should be weighed with care, in view of these suggestions. He intimated no opinion as to the credibility of any of the witnesses in this case. On the contrary, he expressly cautioned the jury, that the questions of fact and the credit due to witnesses were solely for them; that the court intended to express no opinion in regard to them; and that they had no right to infer, from anything which might fall from the judge, what his own opinion was upon the facts. We do not think that this was a charge in respect to matters of fact, within the statute.

The other exceptions taken at the trial cannot be sustained. The refusal of the court to order further specifications is not the subject of exceptions. In all cases, civil and criminal, the question whether bills of particulars or specifications shall be ordered is within the discretion of the presiding judge. *Commonwealth* v. *Giles*, 1 Gray, 466. *Commonwealth* v. *Wood*, 4 Gray, 11. *Gardner* v. *Gardner*, 2 Gray, 434.

The allowance of the amendment, without terms, was also a matter within the discretion of the presiding judge. The fourth rule of the court for the regulation of practice at common law does not apply to a suit for a divorce.

*Exceptions overruled.*