ARTHUR C. SPOONER, administrator, *vs.* OLD COLONY STREET RAILWAY COMPANY.

Bristol.    October 25, 1905. — January 4, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence.    Street Railway.*

Gross negligence of the servants of a corporation operating a railroad or a street railway, which under R. L. c. 111, § 267, makes the corporation liable for the death of a passenger caused by such negligence, is shown by proof of a reckless and wilful disregard of consequences in the conduct of such servants.

In an action under R. L. c. 111, § 267, against a street railway company for causing the death of the plaintiff's intestate, while a passenger on a car of the

defendant, it appeared that the plaintiff, a man seventy-three years of age, was seated on the last seat of an open car and facing the rear of the car, that his legs were crossed below the knees and his arms folded, that the conductor and the motorman in charge of the car had observed him in that position and had noticed that he seemed somewhat exhausted, that as the car was passing around a curve he was thrown out and received injuries from which he died, and there was evidence that this was due to the rapid swaying of the car. There was evidence warranting a finding that as the car approached the curve it was running to make up time and its velocity was greater than its customary speed of eighteen miles an hour, while a reduction of speed to five or six miles an hour was reasonably proper when entering upon and going around the curve. *Held*, that there was evidence warranting the jury in finding that gross negligence of the servants of the defendant caused the death of the plaintiff's intestate.

TORT under R. L. c. 111, § 267, for causing the death of the plaintiff's intestate, Philip H. King, a retired hackman, alleged to have been thrown from an open car of the defendant in which he was a passenger as it was running around a curve about five or six miles north of New Bedford in June, 1902. Writ dated October 20, 1902.

At the trial in the Superior Court before *Lawton*, J. it appeared that the plaintiff's intestate died a few minutes after striking the ground; that he was seventy-three years of age; that he was about five feet tall, weighing about one hundred and eighty-five pounds, with a large stomach and short legs; that at the time of the accident when the car rounded the curve he was sitting on the extreme rear seat within a foot of the end of the car, facing in the opposite direction from that in which the car was going, with his legs crossed below the knees and his arms folded and his coat and umbrella upon the seat beside him; that no one saw him fall, but the conductor saw him after he was out of the car and just before he struck the ground, and a passenger on the car heard him shout as he fell. The material evidence is described in the opinion of the court.

At the close of the evidence the defendant asked the judge to rule that upon all the evidence the plaintiff could not recover, and that there was no evidence in the case to show gross negligence on the part of the agents or servants of the defendant. The judge refused to give these rulings and submitted the case to the jury.

The jury returned a verdict for the plaintiff in the sum of $1,000; and the defendant alleged exceptions.

The case was argued at the bar in October, 1905, before *Knowlton*, C. J., *Lathrop*, *Loring*, *Braley*, & *Sheldon*, JJ., and afterwards was submitted on briefs to all the justices.

*F. S. Hall*, for the defendant.

*J. B. Tracy*, for the plaintiff.

BRALEY, J.   By the provisions of the St. of 1886, c. 140, now R. L. c. 111, § 267, if the life of a passenger is lost " by reason of the negligence or carelessness of a corporation operating a street railway, or of the unfitness or gross negligence or careless-ness of its servants or agents, while engaged in its business," his personal representatives may recover damages for the use of the widow or children, to be assessed within a minimum and maxi-mum limit according to the degree of culpability.   *Holland* v. *Lynn & Boston Railroad*, 144 Mass. 425.

When the plaintiff's intestate became a passenger, the de-fendant engaged to provide proper facilities of transporta-tion, including competent servants, and to carry him safely over its route to where at the end of the transit he would leave the car.

In occupying the seat which faced the fender at the rear, and in taking the position which he assumed after seating himself, the intestate did nothing unusual, or that could be found to have been inconsistent with ordinary prudence.   The car was an open one provided for the accommodation of passengers, who by this arrangement were invited by the company to choose and use this seat among others, and the intestate, having been invited and permitted to use it, had the right to assume that it was suitable for him to occupy, and that he could ride there in safety while being transported.

It is a matter of common knowledge that either from inequal-ities of surface, or necessary curves in the construction of the roadbed, the cars of a railroad operated by steam or of a street railway may in passing over the track occasionally jolt or lurch without this motion being caused by a defect in the track or in the car.   Whenever this occurs, though it may be disturbing and annoying, yet it is considered as fairly incidental to the mode of travel, and must be held to have been contemplated by the passenger.   *Stewart* v. *Boston & Providence Railroad*, 146 Mass. 605.   *Holland* v. *West End Street Railway*, 155 Mass. 387.

*McCauley* v. *Springfield Street Railway*, 169 Mass. 301.   *Byron*
v. *Lynn & Boston Railroad*, 177 Mass. 303.

Inasmuch as there is no evidence that the roadbed was not
properly constructed, or the car suitably equipped, or managed
by competent employees, the plaintiff fails to show any act of
negligence by the defendant under the statute, and if this also
is true of the conduct of the motorman and the conductor the
verdict must be set aside.

Upon taking his seat, the intestate sat with his legs crossed
below the knees, and his arms folded.   While in this position he
was observed by the motorman and conductor, the latter espe-
cially noticing that he "seemed quite exhausted."   From this
evidence the jury could find that both knew he was on the rear
seat in the situation described.

By reason of his weight and the distance from the outer rail
of the track where his body was found, they further could have
found that his ejection was due to the rapid swaying of the
car.   See *Evensen* v. *Lexington & Boston Street Railway*, 187
Mass. 77.

But ordinary carelessness by either the conductor or motor-
man, which if the intestate had survived would have been suffi-
cient to support an action against the defendant, is not gross
negligence for which the company is liable.   Before taking up
the evidence for the purpose of determining this question it may
be well to refer to the meaning of the statutory term "gross
negligence."

We have uniformly held that while something more than a
mere want of common prudence is intended and must be proved,
yet the difference is one of degree, and when a reckless or wilful
disregard of consequences is manifest such conduct is evidence of
great or gross negligence.   *Galbraith* v. *West End Street Rail-
way*, 165 Mass. 572, 579, 581, and cases there cited.   *Emery* v.
*Boston & Maine Railroad*, 173 Mass. 136, 139.   *Banks* v. *Bra-
man*, 188 Mass. 367.

The route of the car was about nine miles, over which it was
expected to pass in thirty minutes, and with the usual delays to
take on and leave passengers the average speed was eighteen
miles an hour.

The witnesses differed as to the rate around the curve, those

for the plaintiff estimating it to be from twelve to fifteen miles an hour or more, while the motorman and the conductor fixed it at from five to six miles. Accompanying their testimony was the evidence of the defendant's experts that a car moving from twelve to fifteen miles an hour would smoothly and safely pass over the curve, and if this testimony stopped at this point it would be evident that proof of recklessness by either of the defendant's employees was lacking. But when the conductor saw the body of the deceased passing through the air from the car to the ground he gave the usual signal to stop, and in a few seconds rang the emergency bell, and although the brake was immediately applied at a point about thirty to thirty-five feet from where the intestate fell, the car, with the brake set, ran over a dry rail about three hundred and sixty-five feet farther before it finally was stopped. Upon this conflicting evidence the jury could have found from the evidence of the conductor and the motorman that reducing the speed from eighteen to five or six miles when entering upon and in going around the curve indicated what rate in their judgment was reasonably proper.

Although the experts of the defendant were of opinion that if the car was moving from twelve to fifteen miles it would not take on an unusual or unsafe swaying motion, the weight to be given their evidence was for the jury in connection with the fact that if no greater rate of speed was employed than the maximum estimate given by them, the intestate would not have been subjected to an impetus by which he was instantly thrown from the car. But there was proof of a greater rate of speed even than that fixed by the experts as safe.

Two of the witnesses called by the plaintiff had observed the car as it passed them about a quarter of a mile distant from the scene of the accident, and according to the evidence of one it was twelve minutes late, and by the evidence of the other it was "going so fast" that he looked at his watch to ascertain the time.

Another witness, who was the only passenger besides the intestate, gave evidence that between the time the signal was given and the time the car stopped perhaps ten seconds elapsed. If his evidence was believed then within this period the car had

moved a distance of at least three hundred and sixty-five feet, which would indicate that it was running slightly in excess of twenty miles an hour.

From the testimony of these witnesses an inference fairly could be drawn that as it approached the curve the car not only was running to make up time, but its velocity was greater than its customary speed of eighteen miles.

This view would be materially corroborated and strengthened by the further uncontroverted fact that upon application of the brake to a substantially empty car, and under such conditions that it must have effectually gripped the wheels, its momentum had become such that it continued under way for the distance already stated.

We are of opinion that it was open upon all the evidence for the jury to find that an old man plainly seen to be in somewhat feeble health had been accepted as a passenger, invited and permitted to take a seat in a place provided for this purpose, but which might become dangerous if an undue rate of speed was maintained in passing over this curve, and thereafter in reckless, or wilful, or wanton, disregard of these conditions, the car was so managed and controlled by those in charge as wrongfully to cause his death.

The defendant suggests that the present case should be governed by *Witherington* v. *Lynn & Boston Railroad,* 182 Mass. 596, but the facts are widely dissimilar. In that case the intestate fell from an open car while standing near the edge of the rear platform, and the track though curved was nearly straight. It is distinctly said in the opinion, " This is not a case where the speed was so great as to result in any unusual motion or jar of the car," and it also was held that there was no negligence on the part of the defendant in not warning the passenger of the obvious danger of standing close to the side of a rapidly moving car. Here it could be found that the deceased did not fall, but by the excessive force of the lateral motion was lifted bodily from his seat, and thrown out of the car.

In the opinion of a majority of the court the order must be,

*Exceptions overruled.*