HOWARD SANDERSON *vs.* BOSTON ELEVATED RAILWAY COMPANY.

CHARLES W. ATCHISON *vs.* SAME.

Suffolk.   November 23, 1906. — February 27, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence.   Street Railway.*

Although there may be movements of an electric street car so violent that a mere description of them and of their results may justify the inference that they were attributable to negligence on the part of the carrier operating the car, yet the fact that a car, which has lessened its speed in approaching a stopping place and is moving slowly but has not reached the stopping place, gives a "plunge forward . . . as though the electricity of the motor or the power had been applied," which also is described by different witnesses as a "jump," a "kind of a lurch" and a "jar ahead to a considerable extent," in the absence of evidence of any defect in the car or the track or of incompetency of the carrier's servants, is no evidence of negligence to support an action against the carrier for injuries from a fall caused by such a movement.

TWO ACTIONS OF TORT for personal injuries respectively sustained by the plaintiffs when passengers on a car of the defend-

ant on Dorchester Avenue in that part of Boston called South Boston from being thrown to the ground in the manner described in the opinion. Writs dated respectively August 12 and May 13, 1902.

In the Superior Court the cases were tried together before *Hitchcock*, J., who instructed the jury that there was no evidence in the cases which would justify the jury in finding the defendant negligent. He ordered a verdict for the defendant in each case, and the plaintiffs alleged exceptions.

*C. C. Johnson*, for the plaintiffs.

*C. F. Choate, Jr.*, for the defendant.

HAMMOND, J. These actions of tort for personal injuries were tried together. The respective plaintiffs were passengers upon one of the defendant's open cars, which was proceeding northerly on the inbound track on Dorchester Avenue towards Boston; and the injuries were received when this car, between First and Second Streets, met a box car also belonging to the defendant, going in an opposite direction on the outward bound track. At the time the cars were passing each other Sanderson was knocked from the left hand running board of the open car, and Atchison, who was also standing upon the same board, was knocked off by collision with Sanderson as the latter fell.

Sanderson testified in substance that his destination was a coal office just north of First Street; that he was familiar with that line of cars; that he knew that the cars stopped only at white posts, and that there was no white post directly opposite the office; that he intended to alight from the car at the white post just north of First Street; that as the car passed Second Street the conductor called out First Street as the next stop; that thereupon he signalled the conductor to stop, and that just before the car came to First Street it "slowed down."

He testified that he had with him a package consisting of a ledger and papers, and some writing material, which during the ride he had placed between his back and the seat. He was seated at the extreme left end of the second seat from the rear of the car. The car was crowded, passengers being upon the rear platform and on each of the running boards. As to the manner of the accident he testified as follows: "As soon as I saw that the car was coming to a stop, I reached for the seat

ahead and got on my feet, and I put my left foot out on to the running board; as I did I took hold of the handle that runs from the seat, the stanchion, that runs up, and I noticed in particular that just in front of the fender of the car about a foot or a foot and a half or two feet was a car coming out on the left [outward] track, coming out from the city. Just at the time I noticed that, I noticed a gentleman get off at the extreme front of the car, he cleared the car and apparently went away to the sidewalk. At that time I reached for my package which was on the seat. I had just practically about got it in my clasp, in my right hand, when immediately there was a plunge forward of the car. It seemed as though the electricity of the motor or the power had been applied. . . . It [the plunge] forced me backwards . . . and I lost my grasp with my left hand. I fell backwards, and since then I found out into somebody, at the time I didn't know what I struck, I struck something backwards and I sort of rebounded and I tried to recover on my feet again, and tried to regain my first hold, and in so doing I plunged to the left into the street. . . . I was knocked unconscious." Upon cross-examination he testified that nobody jostled against him, and he described in greater detail his movements. He further said that the car was moving slowly but had not stopped, nor had it reached the stopping place; and that he did not think it would stop until it reached there; that the conductor was upon the rear platform; that he [the witness] was the only one so far as he knew who was disturbed by the "plunge" of the car; and that although he was familiar with the accelerated motion caused by the sudden application of electricity, he "never experienced before any such jump as the one that occurred when I lost my grip."

The plaintiff Atchison testified that when he boarded the car he stood at first upon the right hand running board, but as the car proceeded and the passengers changed, he gradually worked around over the rear platform to the left hand running board, near the rear seat, where at the time of the accident he was standing; that he did not know Sanderson, and that the first he noticed was when the latter "shot up" his hand; that after the hand shot up the car "slowed down." He then continued: "After his [Sanderson's] hand shot up I noticed he had a paper,

he folded and pushed a paper in his pocket and was about to rise, kind of got hold of the back of the seat in front of him and stood up. With that there was a man — . . . I saw the man that. was standing in front of him or in front of me on the step move up in order to let Sanderson get out, and as he stood up and got hold of that handle and rose up on that, he looked out and he got hold of the . . . [stanchion], . . . got down there with two feet and looked up. . . . [He] got up and stood on the running board. He reached around and lifted up a ledger and had it in his hand and just then the car gave a jump and shook me a bit, and the first thing I knew somebody was thrown back into me, that was Mr. Sanderson that had got up out of his seat. [This coming back] pushed me tight up against the rod that was back of me, the stanchion rod. . . . It knocked my hat off. . . ." In answer to the question "What happened after that," the witness answered "I noticed him kind of struggling to get hold of something. . . . I don't know what struck me, but I . . . [saw] . . . the car coming towards me, and I put up my hand like that. . . . He tried to get his feet and he bounced forward like this, the other car catching him and throws him right back into me and his head caught my nose right here and up against the stanchion rod I went again, . . . [and] . . . I fell right off the car. . . ." The witness testified that this was the second time he was struck.

One of the witnesses for the plaintiff described the movement of the car as a "kind of a lurch," another as a "jar ahead to a considerable extent," "a movement such as you feel when the power is applied"; another, when asked how severe the forward motion of the car was, answered: "Well, I couldn't state how severe it was, simply that I bumped into the man behind me, and he came back on to me. . . . He came back good." There were quite a number of people upon each of the running boards, especially that upon the right; but while some testified that they were thrown back a little it did not appear that the movement was so great as to shake any of them off.

It is to be noted that the theory of the defence as to the way in which Sanderson was thrown from the car was entirely different, and there was evidence that there was no jerk of the car; but since the evidence was conflicting we are to treat the case

upon the supposition that the jury might have believed the evidence of the respective plaintiffs.

Even if the plaintiffs' theory of the accident be adopted, the evidence discloses no negligence of the defendant. There does not appear to have been any evidence of defect in the car or tracks, or of incompetency of the defendant's servants. The car was moving slowly. The plaintiffs were not hurt by any movement of the car at the time and place when and where the defendant was ready to discharge passengers. Sanderson knew that the alighting place was not reached, and that the car would not stop until it reached there. He was accustomed to ride upon the electric cars and was familiar with their operation. There may be movements of a car so severe that a mere description of them and their results may justify the inference that they were attributable to some negligence on the part of the carrier, but the movement described in this case is not of that character. It was not due to any defect, and the possibility of such a movement is a thing which every one who gets upon a street car must be taken to contemplate. See *McCauley* v. *Springfield Street Railway*, 169 Mass. 301. The case must stand with cases like *Byron* v. *Lynn & Boston Railroad*, 177 Mass. 303, and *Timms* v. *Old Colony Street Railway*, 183 Mass. 193.

Atchison's case must fall with Sanderson's.

*Exceptions in each case overruled.*