LILLIAN I. PARTELOW *vs.* NEWTON AND BOSTON STREET
RAILWAY COMPANY.

HENRY L. PARTELOW *vs.* SAME.

Middlesex.    March 5, 1907. — June 18, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Negligence. Street Railway. Evidence,* Opinion. *Witness. Practice, Civil,* Conduct of trial, Exceptions. *Statute,* Construction. *Words,* " Charge."

At the trial of an action by a passenger against a street railway company to recover for injuries received from being thrown from the car as it rounded a curve, there was evidence tending to prove that the plaintiff, a girl seventeen years of age, was sitting at the left end of the front seat of an open, single truck car of the defendant, and that her feet did not reach the floor of the car, that the car

was going rapidly on a down grade just before it reached a sharp curve to the right, that the plaintiff, apprehending danger as she saw the curve, sought to secure herself by holding on to a rod at the end of the seat with her left hand, and held on to her hat with her right hand, that when the car reached the curve it lurched to the right to such an extent as to throw the passengers on the front seat against one another and that the plaintiff was thrown from the car. *Held,* that the questions, whether the plaintiff was using due care, and whether the defendant's employees were negligent, were for the jury. .

At the trial of an action against a street railway company involving the question whether a lurch, caused by a car of the defendant running rapidly around a curve in the track, was due to negligence on the part of the motorman, the criterion of the motorman's negligence is not whether he ought to have realized before the accident that the car was likely to lurch more violently and dangerously than was incident to an ordinary operation of cars upon curves in the track, but whether he was running the car at a rate of speed which under the circumstances and at that place involved unnecessary dangers.

At the trial of an action by a passenger against a street railway company to recover for injuries received from being thrown from the car because it was run rapidly around a curve in the track, it appeared that a rule of the defendant required cars in rounding curves to run not more than three miles an hour, and there was evidence that the rule was violated in this case. The defendant requested the presiding judge to rule: "It must appear that the speed was so unusual under the circumstances that the defendant's servants ought to have realized before the accident occurred that the car was likely to lurch more violently and dangerously than is incident to the ordinary operation of cars upon curves in the track." The request was refused. *Held,* that it was refused rightly because it did not include the questions of the existence and violation of a rule of the defendant as to speed in rounding curves.

At the trial of an action by a passenger against a street railway company to recover for injuries received from being thrown from a car because it lurched as it rounded a curve in the track, the conductor of the car, called by the defendant, was asked how much of a lurch there was, and answered "Well I should say not more than any of these single truck cars would make." *Held,* that the answer was a proper one, because this was a case where a witness might state the result of his observation although it involved in some measure his opinion or judgment.

Before Gen. Sts. c. 115, § 5, now R. L. c. 173, § 80, a judge presiding at a trial properly might state to the jury his opinion as to the weight or effect of the whole or any part of the evidence, if only the comment was made fairly and the question finally was left to be determined by them. In the provision of that statute, that judges "shall not charge juries with respect to matters of fact, but they may state the testimony and the law," the word "charge" refers to the final summing up of the case by the judge to the jury, and the prohibition does not extend to every remark made by the judge to counsel during the trial, though uttered in the presence and hearing of the jury.

At the trial of an action by a passenger against a street railway company to recover for injuries received from being thrown from a car because it lurched as it rounded a curve in the track, the motorman of the car had testified that the lurch was one usual for such a car on a curve. Upon the conductor making the same response to a question, the presiding judge in the presence and hearing of the jury interrupted with the remarks, "That does not answer the question. He comes here to say that. The other man is just the same way. Why should

he say it? Both of them have said it and you [referring to the defendant's counsel] have not stopped them. They shouldn't do it. It is no use to have them answer that way. Whether they came here to say that, I don't know whether that is so or not, but they shouldn't say it." In his charge to the jury, the presiding judge left to them all the questions in dispute, including the credibility of the witnesses, with an express caution against any prejudice in weighing the testimony of these particular witnesses. *Held*, that, while this court has power to sustain exceptions in any case where the conduct of the presiding judge has indicated an actual attempt to prejudice the jury either as to the credibility of material witnesses or upon any disputed question of fact, this was not such a case.

Two ACTIONS OF TORT, the first by a girl seventeen years of age (hereinafter called the plaintiff) to recover for injuries received from being thrown from a car of the defendant as it was rounding a curve, and the second by her father to recover for loss of his daughter's services and for expenses to him caused by her injury. Writs in the Superior Court for the county of Middlesex dated August 20, 1904.

There was a trial before *Bond, J.* From the plaintiff's evidence it appeared that she was a passenger on a single truck, open car of the defendant, which was equipped with a hand brake, and that she was sitting at the left end of the front seat. The place of the accident was a sharp curve in the track preceded by a moderate down grade. The car ran down the grade at a speed variously described by the plaintiff's witnesses as " very fast," " at a very great speed," "a pretty good rate of speed," " at a fast rate of speed," "very, very swiftly," "it seemed to be fast for a curve," "faster than I ever rode in a car before." As the car reached the curve, the passengers were thrown with varying degrees of violence toward the left. The plaintiff testified that as the car approached the curve, which she had seen ahead, she was very nervous because it did not slacken its speed, and sat very still, watching the motorman. As she sat on the seat, her feet did not touch the floor and, with the swaying of the car, she held on to a rod at the end of the seat with her left hand, and on to her hat with the other. When the car reached the curve, she was thrown off. There was no evidence as to the roadbed or track or car being defective.

The defendant's evidence tended to contradict the plaintiff's as to the speed of the car. The motorman testified that the defendant's rules required a speed of not more than three miles an hour

in going around curves, and that he was not exceeding that speed.

At the close of the evidence, the defendant requested the presiding judge to rule that on all the evidence the plaintiff could not recover, and also made the following request for ruling, referred to in the opinion as the defendant's seventh request: "There being no evidence of any defect in the car or track, the plaintiff must show, in order to recover, that the car struck the curve at a dangerous and negligent rate of speed. It is not sufficient to show merely that the car was going at such speed as to make it probable that there would be a lurch or jolt, for it is fairly incidental to street car travel that cars should occasionally lurch and jolt, and passengers must be held to contemplate such occurrences. Neither is it sufficient to show that there was in fact an unusual or violent lurch of the car, or one sufficient to throw the plaintiff off. It must appear by other evidence that the speed was so unusual under the circumstances that the defendant's servants ought to have realized before the accident occurred that the car was likely to lurch more violently and dangerously than is incident to the ordinary operation of cars upon curves in the track." The presiding judge refused both requests, and the defendant excepted.

In the course of his charge to the jury, the presiding judge said, subject to the defendant's exception: " If the curve is there, then it is for the company to go around that curve in such a way that they shall not unnecessarily endanger the safety of passengers. . . . It is for you to say — determining what this curve was — whether this car was running around there with the highest degree of care that could be exercised by the motorman, by any person, so as not to endanger the safety of passengers, and at the same time run the car. . . . The question which you have to consider is, considering the condition of the track, the curve that was there, was this car run with that high degree of care which they ought to have exercised with reference to the safety of passengers and at the same time run their road."

In the course of the trial, a witness called by the plaintiff, also under summons by the defendant, had testified that the lurch which occurred when the car reached the curve was " not more than the ordinary lurch in going around curves." The

presiding judge said to the witness: " You say this was an ordinary lurch. Had you ever known anybody being thrown off before? Is it a common thing to throw off people around a curve?" The defendant's counsel objected to the question of the presiding justice, and he replied : " I want to see if it is a common practice; because, if it is, this plaintiff cannot recover, — she has no case. . . . It occurred to me whether this was an ordinary lurch, whether it was the custom to be shot off."

Later in the trial the motorman of the car, called by the defendant, testifying in cross-examination, stated that the lurch caused by the car going around the curve was not unusual. The conductor of the car was then called by the defendant and, testifying in direct examination, had stated that the lurch " was not more than any of these single truck cars would make," when the presiding judge interrupted the examination with the remark: " That does not answer the question. He comes here to say that. The other man is just the same way. He is not asked that question," and the following colloquy ensued in the presence and hearing of the jury :

Defendant's Counsel. — I must take an exception to your Honor's saying that he came here to say that.

The Presiding Judge. — Why should he say it? Both of them have said it and you have not stopped them.

Defendant's Counsel. — I did not object to your Honor's asking if we were in the habit of throwing people off the cars in rounding curves, I did not take an exception to that ; but I must take exception to this.

The Presiding Judge. — I said that you should not run the car to throw people off. . . . That when he insisted that they were going in the usual way, and it was the usual jerk, I thought it would be a good way to test whether it was a usual jerk, to ask whether they usually threw people off, — and by that you would get some idea of what was a usual jerk.

Defendant's Counsel. — Now your Honor makes the statement that this witness comes here to say that.

The Presiding Judge. — They shouldn't do it. It is no use to have them answer that way and then strike it out. Whether they come here to say that, I don't know whether that is so or not, but they shouldn't say it.

Defendant's Counsel. — I shall certainly have to take an exception to the remark.

The Presiding Judge. — You may take an exception.

Commenting on these matters in his charge to the jury, the presiding judge stated: " Now, there is another matter that occurred in this case, and I want to call your attention to it and caution you about allowing it to have any undue prejudice on your part. At the time one of the witnesses — it was the conductor, I think — was testifying, he was asked some question, and he added to his answer what was not responsive to the question, something to the effect that there was no unusual motion to the car as it went around the curve. The plaintiff's counsel objected to that and asked to have it struck out, and he was entitled to have his motion allowed, but it occurred to me that it was rather technical and would only waste time, because the evidence was competent in itself. I think I owe the plaintiff's counsel an apology that I did not grant the motion, because, technically, he was right, but it did not seem to me that it was necessary, — and I said he came here to testify to that, because that was one of the important features of the defence. I supposed he was coming here for that. The other man testified to it, and I suppose he meant to. But afterwards counsel to some extent, for the defendant, disclaimed anything of the kind. Now I don't want you to allow yourselves to be prejudiced by any thought that I suggested to the plaintiff's attorney that the evidence would come in here and he might as well let it remain where it was. That was a matter for him, but he had a right to make that objection, and I ought to have granted it. Don't let that prejudice you in any way against the testimony of the conductor, or against the defendant's case."

There were verdicts for the plaintiffs.

*H. W. Dunn,* ( *C. H. Walker* with him,) for the defendant.

*James J. Mc Carthy,* for the plaintiffs.

SHELDON, J. A verdict could not have been ordered for the defendant in these cases, and the defendant's first request was refused rightly.

There was evidence on which the jury could find that the female plaintiff, hereinafter called the plaintiff, was in the exercise of due care. She was sitting in one of the seats designed for

passengers, and there was nothing to indicate that she had reason to apprehend any special danger by reason of her position on the left hand end of the front seat. She testified that immediately before the accident, when she became apprehensive by reason of the speed of the car, she endeavored to save herself from possible injury by bracing herself in her seat and grasping the seat and the brass rod at the corner with her hand. This question was plainly for the jury. Indeed, the defendant has not argued to the contrary.

There was also evidence that the car was run at an excessive rate of speed over a somewhat sharp curve on a down grade, and that this caused an unusually severe jolt or lurch of the car, which threw the plaintiff off and caused the injury complained of. It is true that there was much evidence that the car was running only very slowly, and that there was no unusual or extraordinary lurch or jolt, and it may be that this was the weight of the evidence; but the question was for the jury. *Spooner* v. *Old Colony Street Railway*, 190 Mass. 132.

Nor ought the defendant's seventh request to have been given. The criterion of the negligence of the defendant's servants was not whether they ought to have realized before the accident occurred that the car was likely to lurch more violently and dangerously than was incident to an ordinary operation of cars upon curves in the track, but whether they were running the car at a rate of speed which under the circumstances and at that place involved unnecessary dangers. Moreover, there was evidence that a rule of the defendant limited the rate of speed at a place like the one in question to three miles an hour. If this was so, and if the jury found that this rule was violated, that would be a circumstance to be considered in passing upon the negligence of the defendant's servants. *Stevens* v. *Boston Elevated Railway*, 184 Mass. 476. But this consideration was wholly omitted from the request.

The defendant rightly contends that it is a matter of common knowledge that from inequalities of surface and necessary curves, switches and guard rails, street cars in their ordinary and proper operation frequently and unavoidably lurch or jolt, and that such occurrences must be considered to be " fairly incidental to the mode of travel, and must be held to have been contemplated by

the passenger." *Spooner* v. *Old Colony Street Railway*, 190 Mass. 132, 134, and cases there cited. The same rule has been applied to steam railroads. *Foley* v. *Boston & Maine Railroad*, 193 Mass. 332. *Weinschenk* v. *New York, New Haven, & Hartford Railroad*, 190 Mass. 250. Nor, as pointed out in the two cases last cited, is it enough to use strong or violent language in describing the jolt. To furnish ground for an action against the company, it must appear that the lurch or jolt was more than is ordinarily to be expected, and that it was due to a defect in the car or track, a negligent or dangerous rate of speed, or some other cause for which the defendant can be held responsible. *Sanderson* v. *Boston Elevated Railway*, 194 Mass. 337. *Timms* v. *Old Colony Street Railway*, 183 Mass. 193. *Byron* v. *Lynn & Boston Railroad*, 177 Mass. 303. *McCauley* v. *Springfield Street Railway*, 169 Mass. 301. But there was in this case evidence of an unusual and extraordinary jolt, and that this was due to the running of the car at an excessive and dangerous rate of speed. The case comes under the rule of *Spooner* v. *Old Colony Street Railway*, 190 Mass. 132.

The defendant's exception to the comments of the judge on the witness Hart called by the defendant raises a more difficult question. The witness was the conductor of the car. He had answered the question as to how much of a swaying or lurch of the car there had been before the plaintiff fell, by saying, " Well, I should say not more than any of these single truck cars would make." No objection was made by the plaintiff to this answer; and it seems to us to have been a proper one. It was of course impossible to measure accurately the lurch of the car, or to describe it so as to enable the jury to determine its amount with exactness. It naturally would be described according to the standard of everyday experience. This is one of the many cases in which a witness may state the result of his observation, although it involves in some measure his opinion or judgment. *Parker* v. *Boston & Hingham Steamboat Co.* 109 Mass. 449, 451. *Commonwealth* v. *Sturtivant*, 117 Mass. 122, 133. *Commonwealth* v. *O'Brien*, 134 Mass. 198, 200. The presiding judge interfered and said: " That does not answer the question. He comes here to say that. The other man is just the same way. He is not asked that question." The defendant excepted to this, and there-

upon a colloquy ensued between the judge and the defendant's counsel, in the course of which the former said of this witness and another witness of the defendant, " Why should he say it ? Both of them have said it and you have not stopped them. . . . They shouldn't do it.    It is no use to have them answer that way.   Whether they came here to say that, I don't know whether that is so or not, but they shouldn't say it."   It is claimed that this, said in the presence of the jury, might well be taken by them to indicate the judge's opinion that the two witnesses referred to, both of whom had given testimony important to the defendant, were not honestly answering the questions asked them, but were attempting improperly to put into the case evidence favorable to the defendant, and had come to court for that purpose; that the jury well might regard .it as an intimation that they were not credible witnesses.   Our statute provides that " the courts shall not charge juries with respect to matters of fact." R. L. c. 173, § 80.   It is settled that this forbids the judge to express in his charge to the jury any opinion as to the credibility of the witnesses who have testified before them.   *Commonwealth* v. *Barry,* 9 Allen, 276.   *Commonwealth* v. *Foran,* 110 Mass. 179. The defendant's contention is that an expression of such opinion stated to counsel in the course .of the trial, in the presence and hearing of the jury, is likely to be as prejudicial as if embodied in the charge, and is within the spirit of the prohibition.   And it is true that new trials not infrequently have been given in other States under similar circumstances.   *Wheeler* v. *Wallace,* 53 Mich. 355.   *Cronkhite* v. *Dickerson,* 51 Mich. 177.   *Lycan* v. *People,* 107 Ill. 423.   *Hudson* v. *Hudson,* 90 Ga. 581.   *State* v. *Allen,* 100 Iowa, 7.   *State* v. *Stowell,* 60 Iowa, 535.   *McMinn* v. *Whelan,* 27 Cal. 300, 319.   Other cases to substantially the same effect are referred to in Blashfield on Instructions to Juries, §§ 49, 50.

There is undoubtedly force in the defendant's contention; but we do not think that it can be accepted without qualification. Prior to the passage of Gen. Sts. c. 115, § 5, now embodied in R. L. c. 173, § 80, a judge might properly state his opinion as to the weight or effect of the whole or any part of the evidence, if only the comment was fairly made and the question was finally left to be determined by the jury.   *Porter* v. *Sullivan,*

7 Gray, 441, 449.  *Mansfield* v. *Corbin,* 4 Cush. 213.  *Whiton* v. *Old Colony Ins. Co.* 2 Met. 1.  *Davis* v. *Jenney,* 1 Met. 221. *Curl* v. *Lowell,* 19 Pick. 25.  *Commonwealth* v. *Child,* 10 Pick. 253.  The rule which prevailed before the passage of our present statute was well stated by Parker, C. J., in the case last cited: " This would seem to raise the question, whether a judge may reason upon the facts, and if he intimates to the jury his own opinion of the evidence, whether this shall be cause for setting aside the verdict.  We know of no rule requiring the judge to conceal his opinion.  He is to comment upon the evidence. Is he to do it by merely stating that one witness says this thing and another witness says that ?  Has he not power to say, this evidence is weak and that evidence is strong ?  For myself, where the evidence on one side is nearly balanced by counter evidence, I endeavor to leave it to the jury to decide which scale preponderates; but if the evidence on one side is strong, compared to that on the other side, I think it my duty to make the jury comprehend that it is so."  And exactly this was done in *Buckminster* v. *Perry,* 4 Mass. 593.

In this state of the law our present statute was passed, providing that the judge should " not charge juries with respect to matters of fact," but might " state the testimony and the law." We think it manifest that the word " charge " here refers to the final summing up of the case by the judge to the jury, containing his instructions to them, after the evidence has all been heard and the arguments of counsel concluded.  This is the natural import of the word.  And it is of some significance that in all the cases which have arisen heretofore under this statute the questions have been raised upon this final summing up by the judge to the jury.  See *Commonwealth* v. *Johnson,* 188 Mass. 382, 389; *Commonwealth* v. *Flynn,* 165 Mass. 153, 156; *Commonwealth* v. *Walsh,* 162 Mass. 242, 244; *Cobb* v. *Covenant Mutual Benefit Association,* 153 Mass. 176, 181; *Commonwealth* v. *Leonard,* 140 Mass. 473, 480; *Sewall* v. *Robbins,* 139 Mass. 164, 168; *Commonwealth* v. *Brigham,* 123 Mass. 248, 250; *Commonwealth* v. *Foran,* 110 Mass. 179; *Commonwealth* v. *Barry,* 9 Allen, 276; *Harrington* v. *Harrington,* 107 Mass. 329.  The same construction has been given to this word in other States. In *Millard* v. *Lyons,* 25 Wis. 516, it was said that " the word

' charge ' . . . is not intended to include any and every question and answer passing between court and jury. It doubtless refers to the address made by the judge after the case has been closed, when he comments upon the testimony or instructs the jury on any matter of law arising upon it." See to the same effect *Harris* v. *McArthur,* 90 Ga. 216 ; *Moore* v. *Columbia & Greenville Railroad,* 38 S. C. 1, 31 ; *Insurance Co.* v. *Trustees C. P. Church,* 91 Tenn. 135 ; *Dodd* v. *Moore,* 91 Ind. 522 ; *Lehman* v. *Hawks,* 121 Ind. 541 ; *Sharp* v. *Hoffman,* 79 Cal. 404, 408. If the meaning of the word in our statute were otherwise doubtful, the permission given to the court to state the testimony and the law would be decisive ; for practically such a statement could be made only in the final summing up to the jury.

The Legislature has chosen to impose this restriction upon the judge in charging the jury. It has not carried the prohibition further. We cannot properly extend the rule so as to cover every remark which the judge may make to counsel during the trial, not addressed to the jury, though uttered in their presence and presumably heard by them. We have no right to restrict the ancient power of the court further than the Legislature has seen fit to restrict it, probably having in mind the rule which has been often declared in courts of appeal that it is not for every unguarded expression of a judge that a verdict should be set aside and a new trial ordered. *Commonwealth* v. *Johnson,* 137 Mass. 562. *Moseley* v. *Washburn,* 165 Mass. 417, 418, and cases there cited. *Phillips* v. *Beene,* 16 Ala. 720, 723. *Birmingham Ins. Co.* v. *Pulver,* 126 Ill. 329, 340. *Chicago City Railway* v. *McLaughlin,* 146 Ill. 353, 359, 360. *State* v. *Gillett,* 92 Iowa, 527. *State* v. *Cleary,* 97 Iowa, 413.

Although the statement of what had occurred which was made in the charge to the jury, doubtless from the memory of the presiding judge, was not strictly accurate in all respects, yet it left all the questions in dispute, including the credibility of the witnesses, to the jury, with an express caution against any prejudice in weighing the testimony of these particular witnesses. While we do not doubt that this court has power to sustain the exceptions of the aggrieved party in any case where the conduct of the presiding justice has indicated an actual attempt to prejudice the jury either as to the credibility of

material witnesses or upon any disputed question of fact, we do not regard the case before us as presenting such a question. We see no sufficient reason for disturbing the verdict.

*Exceptions overruled.*