CORNELIUS KANE, administrator, *vs.* BOSTON ELEVATED
RAILWAY COMPANY.

Suffolk. March 18, 1914. — May 21, 1914.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & CROSBY, JJ.

*Negligence,* Street railway, Gross.

In an action, by the administrator of the estate of a street sweeper employed by a city against a corporation operating a street railway, under R. L. c. 111, § 267, for causing the death of the plaintiff's intestate before the enactment of St. 1907, c. 392, there was evidence that the accident occurred on a clear night at a place about midway between two electric lights, each somewhat over two hundred feet distant, and on a street containing parallel tracks of the defendant on which street cars passed in each direction at frequent intervals, that the plaintiff's intestate, whose hearing was slightly impaired, had finished sweeping one side of the street and was proceeding to cross the street to help the men at work on the other side, and in doing so looked from three different positions in the direction from which the car that struck him came and no car then was in sight, that when he nearly had passed over the second track he was struck and killed by a car of the defendant moving at the rate of thirty miles an hour, and that his body was rolled over by the impact and was thrown upon a pile of dirt seven or eight feet from the nearest rail while the car went on for two hundred feet farther before it was stopped, that there was a city ordinance in force at the time of the accident restricting the speed of cars on this street at this place to eight miles an hour, that the motorman knew or ought to have known that city laborers were at work every night sweeping the street in the vicinity of the place where the accident happened, and that the motorman also knew that his view would be partially, if not wholly, obstructed until he had reached a point at the top of a grade two hundred and sixty-five feet from the place of the accident, and that he sounded no gong and gave no other warning of the approach of the car. *Held,* that there was evidence for the jury that the plaintiff's intestate was in the exercise of due care and that the defendant's motorman was grossly negligent.

CROSBY, J. The plaintiff's intestate, Daniel Kane, who was a street sweeper in the employ of the city of Cambridge, was struck by an electric car of the defendant on Bridge Street in Cambridge on August 27, 1902, shortly after ten o'clock in the evening, and received injuries from which he died a few hours later. This action is brought under R. L. c. 111, § 267, (now St. 1906, c. 463, Part I, § 63,) to recover for his death.* The first count of the

* The writ was dated October 10, 1902. The case was tried before *Brown,* J., who ordered a verdict for the defendant. The plaintiff alleged exceptions.

declaration alleges gross negligence on the part of the defendant, its servants and agents. St. 1907, c. 392, which has stricken out the word "gross" in R. L. c. 111, § 267, as amended by St. 1906, c. 463, Part I, § 63, does not apply to this case, as the alleged cause of action arose before the passage of the statute of 1907.

There was no evidence to warrant a finding of incompetency or unfitness of the defendant's servants who were in control of the car, or that the car was in a defective, unsafe or improper condition; nor was there any evidence to show that the defendant's roadbed or tracks were in a defective or unsafe condition. Accordingly the evidence would not warrant a recovery by the plaintiff upon the second, third or fourth counts of his declaration; the only questions presented being, whether there was evidence of due care of the plaintiff's intestate, and of gross negligence of the defendant's motorman.

Bridge Street is one of the principal highways connecting Cambridge with Boston, and passes over the Craigie Bridge.* At the time of the accident the street was undergoing certain alterations and repairs in the vicinity of the place where it occurred, and the old bridge was being replaced by a temporary structure. The defendant maintained two car tracks on Bridge Street, which were nearly in the centre of the street at the place of the accident. There was evidence from which the jury could have found the following facts: That the distance from the middle of the Craigie Bridge to the place of the accident (which was about opposite to a temporary street leading northerly off Bridge Street) was between five and six hundred feet; that from the middle of the Craigie Bridge westerly to a point opposite Prison Point Street (which leads off Bridge Street to the north) was about three hundred feet; that from a point opposite Prison Point Street to the place of the accident was two hundred and sixty-five feet; that the highest point on Bridge Street in this vicinity was opposite Prison Point Street, from which there is a descending grade of two and seven tenths feet in each one hundred feet to the place of the accident; and that from Prison Point Street down to the bridge the grade is also descending.

* Now replaced by the Charles River Dam.

The plaintiff contended and there was evidence to show that from the place of the accident an outbound car running toward Cambridge could not be seen until it reached the top of the grade at a point opposite Prison Point Street. It is agreed that the moon was not visible on the night of the accident, but that the night was clear and cloudless, and that the place where the decedent was struck was distant two hundred and ten feet from the nearest electric light and two hundred and twenty feet from the next nearest; consequently the accident occurred about half way between these two lights. There was a transfer station of the defendant on Bridge Street one hundred and fifty to two hundred yards westerly of the place of the accident.

On the evening in question the plaintiff's intestate and one Sullivan had been sweeping Bridge Street on the southerly side, working in an easterly direction. When they had arrived at a point opposite the temporary street, Kane placed his broom on his shoulder and started to cross the street from the southerly to the northerly side. Two other city laborers were sweeping the northerly side of the street, and the decedent, having finished the work on the southerly side, was proceeding to cross the street for the purpose of assisting the men at work upon the opposite side. The jury could have found that before he placed his broom on his shoulder he looked in both directions, that before he reached the inbound track he looked in the direction of Boston, and that at that time no car was in sight. There was other evidence that when he was between the inbound and outbound tracks he looked toward Boston and was struck by an outbound car when he nearly had passed over the outbound track. It is agreed that there was an ordinance of the city of Cambridge in force at the time of the accident which restricted the speed of cars on this street at this place to not over eight miles an hour. One witness testified that the car which struck the decedent was running at the rate of thirty miles an hour and did not stop until it had reached a point about two hundred feet from the place where the accident occurred. It could have been found that no gong was sounded after the car left the bridge up to the time the plaintiff's intestate was struck, and that his hearing was slightly impaired. The evidence was conflicting

as to the distance from which an outbound car could be seen from the place of the accident, as to the speed of the car, and as to many other important particulars. There is no occasion to recite in detail the voluminous and contradictory testimony. The jury would have been warranted in finding that the decedent looked in the direction from which the car came on three separate occasions and from three different places in crossing the street; and in view of the conflict in the testimony as to the distance from which a car could be seen, and of the evidence that no gong was sounded, that his hearing was somewhat impaired, and that the car was running at the rate of thirty miles an hour, we do not think that it could have been ruled that there was no evidence of due care on his part, but that this question should have been submitted to the jury. *Gaynor* v. *Old Colony & Newport Railway,* 100 Mass. 208. *Robbins* v. *Springfield Street Railway,* 165 Mass. 30. *Creavin* v. *Newton Street Railway,* 176 Mass. 529. *Horsman* v. *Brockton & Plymouth Street Railway,* 205 Mass. 519. *Chisholm* v. *Newton Street Railway,* 214 Mass. 281.

It is strongly contended by the defendant that the evidence was not sufficient to warrant a finding of gross negligence on the part of the motorman. Upon this question the case is close. It is to be borne in mind that neither the plaintiff's intestate nor the defendant was entitled to the exclusive use of the highway, but that the duties and obligations of each as travellers were reciprocal; each was bound to exercise his rights in such a manner as not negligently to injure the other. The evidence shows that Bridge Street is one of the principal thoroughfares connecting Boston with Cambridge, and it fairly might be inferred that there was a large amount of travel over this street. It appears that upon it double tracks were maintained, over which cars passed with great frequency in both directions, and usually passed the place of the accident at night every three minutes. The jury could have found that the motorman knew or ought to have known that city laborers were at work each night, sweeping the street in the vicinity of the place where the plaintiff's intestate was struck, and that the view of an outbound car would be partially, if not wholly, obstructed until it reached the top of the grade at a point two hundred and sixty-five feet from the place of the accident; that

the motorman ran his car down this incline at a speed of thirty miles an hour, which was nearly four times faster than the ordinance permitted, and passed two intersecting streets at night with the nearest electric light more than two hundred feet from the place of the accident, without sounding any gong or other warning of its approach, and struck the plaintiff's intestate as he was nearly across the outbound track; that the decedent's body was rolled over by the impact and thrown upon a pile of dirt seven or eight feet from the nearest rail; and that the car did not come to a stop until it had reached a point about two hundred feet beyond where the decedent was struck.

In view of this evidence, especially that relating to the dangerously high rate of speed at which the car was operated, without any warning given of its approach, it could not have been ruled as matter of law that the motorman was not guilty of gross negligence. This evidence, if believed, would warrant a finding that the motorman failed to exercise even a slight degree of care, and such a finding would be a finding of gross or great negligence on his part. *Galbraith* v. *West End Street Railway*, 165 Mass. 572, and cases cited. *Evensen* v. *Lexington & Boston Street Railway*, 187 Mass. 77. *Spooner* v. *Old Colony Street Railway*, 190 Mass. 132. *Beale* v. *Old Colony Street Railway*, 196 Mass. 119. *Berry* v. *Newton & Boston Street Railway*, 209 Mass. 100. *Davis* v. *Boston & Northern Street Railway*, 214 Mass. 98.

We have not considered the exceptions taken to the admission and exclusion of evidence, as they were expressly waived by the plaintiff at the argument.

*Exceptions sustained.*

*A. J. Connell*, for the plaintiff.
*W. G. Thompson*, for the defendant.