BURTON A. PIERCE vs. WORCESTER CONSOLIDATED STREET
RAILWAY COMPANY.

Worcester.   May 19, 1919. — June 24, 1919.,

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence*, Street railway.

At the trial of an action against a street railway company for personal injuries received when the plaintiff was run into by an open car of the defendant with running boards along the sides, there was evidence that the accident occurred a half hour after midnight; that just previous to it the plaintiff with others had stood, facing west on the street to the west of the street railway track, which ran north and south; that in front of the plaintiff as he stood was a railroad track, over which there was passing a freight train, for whose passing he was waiting and which was making considerable noise; that the car of the defendant approached from the north at a high rate of speed; that when the car was seven hundred feet from the plaintiff, the conductor in the performance of his duties started along the running board toward the front of the car; that when he arrived at the front, he saw the plaintiff and the others; that he then noticed that the trolley of the car was off, the car then being something more than one hundred feet from the plaintiff; that he said something to the motorman and returned to the rear of the car; that the car proceeded at the same high rate of speed, without lights and with no "whistle, gong, shout or warning of any kind" until the plaintiff was struck with the front end of its right hand running board and injured, and that it then continued two hundred and thirty feet before it was stopped. Something more than thirty-five feet north of where the plaintiff was standing there was, in the track on which the car was approaching, a "flat curve to the left." Rules of the defendant required a reduction in speed of the car so that it would "drift" when approaching sharp curves, and that, when a trolley left the wire, the conductor should "at once signal the motorman to stop, and pull down the trolley." *Held*, that there was evidence of negligence of the conductor which contributed to cause the injury to the plaintiff.

TORT for personal injuries received by the plaintiff when he was struck by a passing electric street car of the defendant. Writ dated December 19, 1916.

In the Superior Court the action was tried before *Fox*, J. The material evidence is described in the opinion. There was evidence of due care of the plaintiff and of negligence of the motorman of the car in question. The defendant asked for a ruling that there was no evidence of negligence on the part of the conductor. The

request was refused. The jury found for the plaintiff in the sum of $3,100; and the defendant alleged exceptions.

The case was submitted on briefs.

C. C. Milton, J. M. Thayer & F. H. Dewey, for the defendant.

G. A. Drury & F. A. Walker, for the plaintiff.

CARROLL, J. The plaintiff, while standing on West Boylston Street near New Bond Street in the city of Worcester, waiting for a freight train to cross New Bond Street, was struck by the front end of the right hand running board of one of the defendant's cars and injured. The jury found for the plaintiff. It was not disputed there was evidence for the jury of the plaintiff's due care and of the negligence of the motorman. The defendant asked the court to rule that there was no evidence of the conductor's negligence, the exception to the refusal to grant this request is the only question open on the record.

The jury could have found that the plaintiff, a workman in the night shift of the Norton Company, was returning from lunch about 12:30 A. M.; that he crossed West Boylston Street and stood facing westerly with his hand resting on the northerly side of a twelve inch pole about four feet and three inches from the westerly rail of the defendant's track; that the freight train was proceeding up grade, making considerable noise; that the defendant's car was going in a southerly direction "at a very fast rate of speed;" that one hundred feet north of New Bond Street the trolley came off, the lights went out and were not on until after the plaintiff was injured; that the speed of the car was not lessened before the plaintiff was struck, and when the car was stopped its rear end was two hundred and thirty feet away from the place of the accident; that no "whistle, gong, shout or warning of any kind" was given by the defendant's employees.

From the motorman's evidence it might be found that he saw the plaintiff before he was injured; that the conductor came forward and "said something," (but it did not appear what he said,) and "was just getting up on the platform." The conductor testified that at a point six or seven hundred feet north of New Bond Street he started down the running board to the front of the car to get ready to "run the railroad crossing" south of New Bond Street; that as he was stepping up off the running board, he noticed

the trolley was off and started for the rear of the car to put it on; that he observed the people "standing on the south side of the crossing," when he was "at the front end of the car." There was evidence that thirty-five feet north of New Bond Street there was a "flat curve to the left in the southerly bound track." Rule 313 of the defendant company, "When approaching switches, frogs or sharp curves, power must be shut off 100 feet in advance, speed of car reduced, and car allowed to drift slowly over the same," was in evidence, as well as Rule 357, "Trolley Pole, Leaving Wire, Should the trolley leave the wire, the conductor must at once signal the motorman to stop, and pull down the trolley. After the trolley is fairly on the wire, he must ring two bells for the motorman to start, first looking around and through the car to see if any persons are boarding or leaving same. See that passengers keep their hands off the trolley rope. Trolley Catchers. Conductors are responsible for trolley catchers and retrievers, and must see that same are securely fastened in place. When changing ends they must see that catchers do not slip, so as to cause damage to glass or other part of the car." On these facts, it cannot be said that as matter of law there was no evidence of the conductor's negligence. There was some evidence for the jury to consider, and the defendant's request was refused rightly.

The jury could say that the conductor knew the plaintiff was in a place of danger; that the plaintiff's attention was probably directed toward the passing freight train; that in the absence of light on the street car he might be ignorant of its approach, and the conductor should in some way, have warned him of his danger or signalled the motorman to stop the car; especially when he knew the car was moving at a high rate of speed, without lights and when no signal from the gong or whistle was given.

Under Rule 357 the conductor was required at once to signal the motorman to stop; and it could have been found that by failing to give this signal when the trolley left the wire, and by neglecting to connect the trolley with the wire, leaving the car in darkness, he failed to comply with the rule, and that this neglect contributed to the plaintiff's injuries. See *Stevens* v. *Boston Elevated Railway,* 184 Mass. 476; *Partelow* v. *Newton & Boston Street Railway,* 196

Mass. 24, 30; *Olund* v. *Worcester Consolidated Street Railway*, 206 Mass. 544, 546, 547; *Leavitt* v. *Boston Elevated Railway*, 222 Mass. 346, 347.

*Exception overruled.*